IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

U.S. CLAIMS, INC.                          :
                                           :        CIVIL ACTION
            Plaintiff,                     :
                                           :
      v.                                   :
                                           :        NO.  07-0543
SAFFREN & WEINBERG, LLP.,                  :
KENNETH S. SAFFREN, ESQUIRE                :
and MARC A. WEINBERG, ESQUIRE             :
                                           :
            Defendants.                    :

**MEMORANDUM**

BUCKWALTER, S.J.                                      November 29, 2007

Currently pending before the Court is the Motion of Defendants Saffren & Weinberg,

LLP, Kenneth S. Saffren, Esquire and Marc A. Weinberg, Esquire to Dismiss the Amended

Complaint or, in the Alternative, Stay These Proceedings.  For the following reasons, it is

ordered that the Motion be granted in part and denied in part.

I.      **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, U.S. Claims, Inc., is a corporation engaged in the business of purchasing an

interest in the proceeds of individuals' anticipated personal injury claims.  (Amended Complaint,

¶ 7.)  It provides small loans and then receives payment only if an individual plaintiff recovers.

(Id.)  Pursuant to the contractual obligations, each of the personal-injury clients (the "clients") are

required to sign a purchase agreement setting forth the rights and liabilities of each party to the

contract. ( Id. at ¶ 10 and Ex. B.)

All of the purchase agreements entered into between the clients and U.S. Claims, in this case, contain the same following provisions.  First, the client agrees to a continuing duty to deliver to U.S. Claims all notices, instructions or agreements regarding the claim.  Second, he or she agrees to pursue the claim and not withdraw, discontinue or end the claim prior to any verdict or settlement.  (Id. at ¶ 10.)  Third, the client agrees that if he or she becomes involved in a bankruptcy proceeding prior to U.S. Claims' receipt of its interests in the proceeds, he or she shall notify the bankruptcy court of U.S. Claims' interests in those proceeds.  (Id. at ¶ 11.)

The agreements further provide multiple definitions of "default."  First, default could occur by the failure of the client or his/her attorney to pay the interest in the proceeds within thirty days after a verdict, order or settlement with respect to the client's claim and from when the proceeds are actually received by the client or his/her attorney.  (Id. at ¶ 12.)  Further, default could occur by failure to conform or comply with any of the conditions, provisions or promises contained in the agreement and such non-compliance continues for a period of ten days.  (Id.) Finally, default could occur if U.S. Claims discovers any material misrepresentation or inaccuracy in any representation or warranty made by the client to U.S. Claims in the purchase agreement.  (Id. at ¶ 12.)  There is, in addition, a provision providing for equitable relief.  (Id. at ¶ 13.)

Pursuant to the power of attorney provision of the agreement, Darryl Levine, an officer of U.S. Claims, Inc., is appointed as "the lawful attorney in fact" of the plaintiff in the personal injury claim to accept, endorse and deliver for deposit to U.S. Claims and to credit payment of its interests in the proceeds of any negotiable interest received from any company as payment of the portion of the proceeds of the personal injury plaintiff from the claim.  (Id. at ¶ 14.)  Each client

signs an authorization for his or her attorney to pay U.S. Claims from proceeds of the claim.  (Id. at ¶ 15.)

In connection with this contractual arrangement, the attorney for the personal injury client must also sign an accompanying acknowledgment agreement, which incorporates, by reference, all the terms and conditions of the purchase agreement.  (Id. at ¶ 7 and Ex. A.)  By virtue of this acknowledgment agreement, the attorney must certify that he has no knowledge of the client having previously sold, transferred or assigned any interest in the claim or the proceeds of the claim to any other person or entity except for U.S. Claims, Inc.  (Id. at ¶ 8.)  Further, the attorney must notify U.S. Claims of any verdict, award, settlement, discontinuance or ending with respect to the claim as soon as it occurs and notify U.S. Claims, Inc. when the proceeds are received from either the verdict, award or settlement.  (Id.)  Moreover, the attorney has a duty to notify U.S. Claims, Inc. if (1) the client discharges him as counsel; (2) he becomes aware of any sale, transfer or assignment of any interest in the claims or the proceeds of the claim by the plaintiff to any other person or entity; or (3) the attorney becomes aware of misrepresentation, fraud or deception regarding the claim or the agreement with U.S. Claims committed by the client.  (Id.)  Finally, the attorney agrees to withhold any funds owed to U.S. Claims pursuant to the purchase agreement out of the proceeds received from the personal injury claim by the client.  (Id.)

The authorization agreement also provides that U.S. Claims has the right to request in writing about the status of the matter.  (Id. at ¶ 9.)  Any failure to respond in writing to U.S. Claims, Inc. within thirty days of such a request is deemed an acknowledgment by the attorney that there had been no verdict, award, settlement, discontinuance, or ending with respect to the claim, that proceeds have not been received from either verdict, award and/or settlement, and that

counsel is still counsel in the matter and has no knowledge of the client selling, transferring or assigning any interest in the claim or proceeds from the claim to any other person or entity or committing any representation, fraud or deception regarding the claim or the purchase agreement. (Id. at ¶ 9.)

Defendants Kenneth S. Saffren, Esq., Marc A. Weinberg, Esq. and Saffren and Weinberg, LLP represented, as attorneys, many of the clients who entered into purchase agreements with U.S. Claims.  (Id. at ¶ 16.)  These defendants either signed or were committed by agency principles to the authorizations required by U.S. Claims.  (Id. ¶ 17.)

On March 28, 2007, Plaintiff U.S. Claims filed an Amended Complaint involving twenty-five of these contractual agreements with clients made during the period of December 14, 2001 to October 22, 2004.  (Id. at ¶¶ 20-457.)  Based on the accompanying authorization agreements executed by Defendants, and pursuant to the schedule of payments set forth in the authorizations, Plaintiff now seeks an amount in excess of $150,000, plus equitable relief.  The Amended Complaint contains a total of seventy (70) counts against Defendants, divided as follows:

A.   Twenty-five breach of contract counts involving the authorization agreements signed by Defendants;

B.   Nineteen conversion counts;

C.   Nineteen interference with contract counts;

D.   Five fraud counts;

E.   One negligent misrepresentation count; and

F.   One equitable relief count relating to twenty-one other clients.

(Id.)  In essence, Plaintiff alleges that Defendants breached their contractual duties and/or

4

committed tortious violations by (1) failing to remit and/or converting sums due to Plaintiff; (2) negligently or fraudulently misrepresenting the availability of insurance for some of the clients; (3) failing to advise of their discharge in certain suits; (4) failing to advise of certain settlements or verdicts; and (5) failing to report on the status of the various personal injury claims in which Plaintiff had an interest.  (Id.)

On April 10, 2007, Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, Stay the Proceedings, alleging that (1) sixteen of the twenty-five breach of contract counts with their accompanying tort actions must be dismissed pursuant to an enforceable arbitration clause; (2) the remainder of the counts sounding in tort are barred by the gist of the action doctrine and/or economic loss rule; and (3) the remaining nine breach of contract counts should either be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for failing to meet the amount in controversy under 28 U.S.C. § 1332(a) or, alternatively, be stayed pending resolution of the arbitrable claims.

## II.    STANDARD OF REVIEW FOR A MOTION TO DISMISS

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a defendant bears the burden of demonstrating that plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering such a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Notably, though, the court will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form

of factual allegations.  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

The question before the court is not whether the plaintiff will ultimately prevail.  <u>See</u> <u>Hishon v.</u>

<u>King & Spalding</u>, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).  Rather, the court should only

grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief."  <u>Carino v. Stefan</u>, 376 F.3d 156,

159 (3d Cir. 2004) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  "The

defendant bears the burden of showing that no claim has been presented."  <u>Hedges v. United</u>

<u>States</u>, 404 F.3d 744, 750 (3d Cir. 2005).____

## III.   DISCUSSION

### A.   <u>Arbitration Clauses</u>

_____At the outset, Defendant argues that the Court must dismiss sixteen of the twenty-five

breach of contract counts pursuant to an arbitration clause contained in the applicable contracts.[1]

Specifically, sixteen of the purchase agreements involved in this case contain the following

language:

> Except as otherwise provided in Paragraph 8 above, any dispute between You [the client] and US [U.S. Claims, Inc.] arising under or relating to this Agreement (including the question of whether any particular matter is arbitrable under this Agreement), or concerning the construction, interpretation and effect of this Agreement or any claims in this Agreement, or the rights and liabilities of You or Us, shall be settled by arbitration.  The location for any such arbitration shall be in either Philadelphia, PA or Wilmington, DE and You and We waive all questions of personal jurisdiction or venue for purposes of carrying out the provisions of this Paragraph 9.  All proceedings under this Paragraph 9 shall be undertaken in accordance with the rules of the American Arbitration Association ("AAA") then in force.

(Am. Compl. Ex. B.)  For each of those sixteen purchase agreements, Defendants signed an

_____

[1]  Defendants actually present their gist of the doctrine/economic loss argument as the primary basis for its motion to dismiss.  For clarity purposes, however, the Court discusses the arbitration argument first.

accompanying acknowledgment agreement, which expressly indicates that:

> [Defendants] intending to be legally bound, hereby acknowledge that I represent [client name], as his or her attorney, in connection with the Claim described in certain Purchase Agreement dated [date] between [client] and US CLAIMS, INC., the terms and conditions of which are incorporated herein by reference (the "Purchase Agreement.").

(Id. at Ex. A.)  In response to the Amended Complaint, Defendants now allege that the following claims for breach of contract must be dismissed pursuant to this incorporated arbitration clause: Count I (Bernard Sampson); Count II (Nekia Fields);[2] Count XII (Dennis O'Neill and Louise Woods); Count XIII (Joanne Burney); Count XVII (Penny Lewis); Count XXV (Tarik Derrick); Count XXVIII (Robert Hill); Count XXXI (Benjamin Jones); Count XXXVII (Bryan Millhouse); Count XLIII (Jose and Wanda Torres); Count XLVI (Jonathan Truesdale); Count LII (Mark Williams); Count LV (Martha McCaine); Count LVIII (Julia Sharp); Count LXI (Jon James); and Count LXVII (Jon James).  (Id. at Exs. D, N, P, R, Z, BB, DD, HH, LL, NN, RR, TT, VV, XX and CCC.)

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985).  "The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable." Id..  The FAA, therefore, "preempts state law that might 'undercut the

---

[2]  As Defendants point out, Plaintiff has failed to include a copy of the purchase agreement relating to Nekia Fields.  As such, the Court is unaware of whether her contract contains an arbitration agreement.  For purposes of this Motion, however, the Court will presume that her purchase agreement contains such a provision unless Plaintiff comes forward with the actual contract to prove otherwise.

enforceability of arbitration agreements.'" Id. (quoting Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S. Ct. 852 (1984)).[3]

The FAA evidences a strong policy in favor of arbitration. Therefore, any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration. AT & T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986). Nonetheless, a court cannot order the arbitration of any claim unless the parties to a dispute have agreed to arbitration. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54 (3d Cir. 2000). Before compelling an unwilling party to arbitrate, section 4 of the FAA requires the court to ensure that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. AT&T Tech., 475 U.S. at 648-649. If a valid agreement exists and the controversy falls within its terms then, as noted above, the clause "shall be valid, irrevocable, and enforceable" and the court must mandate arbitration. 9 U.S.C. § 2.

-------------------

[3] Plaintiff argues that Delaware law controls the determination of whether the arbitration clause applies. Plaintiff, however, ignores the Federal Arbitration Act, which expressly states that it governs any "maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the Act, "commerce" is defined, in part, as "commerce among the several States or with foreign nations." 9 U.S.C. § 1. It is unquestionable that the transactions at issue involved interstate commerce for purposes of the FAA. Plaintiff is a Delaware corporation with its principal place of business in NJ. All of the clients who signed purchase agreements at issue and all of the defendants are Pennsylvania residents. Accordingly, the FAA controls. See Goodwin v. Elkins, 730 F.2d 99, 108 (3d Cir. 1984) ("if the Arbitration Act is deemed applicable, federal law applies in construing or enforcing an arbitration clause, even in those cases in which jurisdiction is based on diversity.")

In any event, the sole case cited by Plaintiff expressly recognized that there is a "liberal federal policy favoring arbitration agreements" which is "mirrored in Delaware law." State of Del. v. Phillip Morris USA, Inc., Civ. A. No. 2088-N, 2006 WL 3690892, at *3 (Del. Ch. Dec. 12, 2006)

In the case at bar, Plaintiff alleges that a factual issue exists as to whether the parties actually agreed to arbitration, thereby barring dismissal on this ground.  Specifically, it contends that (1) the acknowledgment agreement does not itself contain an arbitration clause; (2) the arbitration clause specifically limits its effect to the purchase agreements entered into between U.S. Claims and the clients, not between Plaintiff and Defendants; (3) the arbitration clause does not apply to the fraud and negligent misrepresentation claims; and (4) the arbitration clause does not apply to claims for specific performance.

As to the first claim, questions of construction and enforceability of arbitration agreements governed by the FAA, including whether the arbitration provisions in the purchase agreements are incorporated into the acknowledgment agreements, are controlled by federal substantive law.  See Cost Bros. Inc., 760 F.2d at 60.  It is axiomatic, under federal law, that "[w]here a writing refers to another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  Carver v. Global Sports, Inc., Civ. A. No. 00-139, 2000 WL 378072, at *3 (E.D. Pa. March 28, 2000) (citing 4 WILLISTON ON CONTRACTS § 628 (3d ed.1961)).  See also Prof'l Sports Tickets & Tours, Inc. v. Bridgeview Bank Group, Civ. A. No. 01-991, 2001 WL 1090148, at *4 (E.D. Pa. Sept. 13, 2001) (citing 72 AM. JUR. 2D, Statute of Frauds § 372 (1974)) ("a party is bound by all of the provisions in the written agreement that it signs as well as the provisions that are expressly incorporated by reference into the contract.").  Accordingly, where a party signs a contract that incorporates the terms and conditions of another contract containing an arbitration provision, that party is likewise bound to the arbitration provision.  See, e.g. Prof'l Sports Tickets, 2001 WL 1090148, at *4 (incorporating arbitration from one contract into another); Carver, 2000 WL 378072, at *3 (same).

9

With regard to Plaintiff's second argument that the clause does not encompass the precise dispute at issue, the Court likewise finds no merit.  The arbitration clause, as written, covers three situations: (1) "any dispute between You and Us arising out of or relating to this Agreement (including the question of whether any particular matter is arbitrable under this Agreement)"; (2) any dispute "concerning the construction, interpretation and effect of this Agreement or any claims in the Agreement"; or (3) any dispute concerning "the rights and liabilities of You or Us." (Am. Compl. Ex. B.)  As aptly noted by Defendants, the breach of contract actions in the Amended Complaint before the Court clearly involve construction, interpretation and effect of the Agreement and the rights and liabilities of U.S. Claims.  Further, as noted above, there is a strong presumption in favor of arbitrability.  <u>Sharon Steel Corp. v. Jewell Coal & Coke Co.</u>, 735 F.2d 775, 778 (3d Cir. 1984).  Finally, the Third Circuit has noted that "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction."  <u>Battaglia v. McKendry</u>, 233 F.3d 720, 727 (3d Cir. 2000).  Taking these legal principles collectively, the Court has little trouble concluding that the breach of contract claims contained in the Amended Complaint are arbitrable.

Third, notwithstanding Plaintiff's argument to the contrary, the fraud and negligent misrepresentation claims contained in Counts III, IV and XX[4] also fall within the scope of the arbitration provision.  Under the well-established doctrine set forth in <u>Prima Paint Corp. v. Flood and Conklin Mfg Co.</u>:

---

[4] Although there is no corollary breach of contract claim for the fraud claim in Count XX (Vincent Teagues), a review of his purchase agreement (Am. Compl. Ex. T) reveals that both it and, therefore, its related acknowledgment agreement contain an arbitration clause.  The remaining fraud claims at Counts XIV, XV and XVI involve contracts that have no arbitration provisions.

> [I]f the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the "making" of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . We hold, therefore, that . . . a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

388 U.S. 395, 403-404, 87 S. Ct. 1801, 1806 (1967) (footnotes omitted).   Thus, while a court must decide whether an arbitration clause is valid, it may not consider a claim of fraud in the inducement of the contract generally.  Elcom Technologies Corp. v. American Dynasty Surplus Lines Ins. Co., Civ. A. No. 99-0951, 2000 WL 1470217, at *5 (E.D. Pa. Oct. 3, 2000) (citing Prima Paint Corp., 388 U.S. at 404).  "That role is for the arbitrator."  Id.

Plaintiff makes no effort to dispute validity of the arbitration clause itself.  Nor does it allege any specific fraud leading to the inclusion of the arbitration clause.  Rather, the fraud and negligent misrepresentation claims go directly to the making of the contract as a whole.  Under the Prima Paint doctrine, such a matter remains in the hands of the arbitrator and falls outside the Court's province.[5]

By the same token, although not clearly argued by either party, the conversion and intentional interference with contract claims related to the acknowledgment agreements with arbitration clauses are not properly before the Court.[6]  It is well-established that where separate tort claims arise out of the same facts as the breach of contract claim, a broadly worded arbitration

---

[5]  Notably, of the fraud and negligent misrepresentation claims, only Counts III, IV and XX are arbitrable since the contracts to which they are tied have arbitration clauses.

[6]  The conversion and intentional interference with contract counts that fall within the arbitration provisions are as follows:  XVI, XIX, XXVI, XXVII, XXIX, XXX, XXXII, XXXIII, XXXVIII, XXXIX, XLIV, XLV, XLVII, XLVIII, LIII, LIV, LVI, LVII, LIX, LX, LXII, LXIII, LXVIII, LXIX.

provision covers such claims.  See CD Partners, LLC v. Grizzle, 424 F.3d 795, 800 (8th Cir. 2005)

("Broadly worded arbitration clauses . . . are generally construed to cover tort suits arising from

the same set of operative facts covered by a contract between the parties to the agreement); P&P

Indus. v. Sutter Corp., 179 F.3d 861, 871-872 (10th Cir. 1999) (arbitration clause which provided

that "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" shall be

arbitrable, was broad enough to encompass tort claims where the tort allegations were closely

connected to breach of contract action); Nova CTI Caribbean v. Edwards, Civ. A. No. 03-5319,

2004 WL 35759, at *4 (E.D. Pa. Jan. 8, 2004) (holding that because plaintiff's tortious

interference with contractual relations claim was directly related to the claim that defendant

breached the Agreement by resigning from plaintiff and forming an employment relationship with

another company, the tort claim fell into the scope of the arbitration provision); Troshak, II v.

Terminix Int'l Co., L.P., Civ. A. No. No. 98-1727, 1998 WL 401693, at *6 (E.D. Pa. July 2, 1998)

(finding that clause was broad enough to cover negligence claim since the tort claim arose out of

the same facts as a breach of contract claim); Pa. Data Entry, Inc., v. Nixdorf Computer Corp.,

762 F. Supp. 96 (E.D. Pa.1990) (concluding that restitution, fraud, negligent misrepresentation

and tortious interference with contractual relations claims were subject to arbitration).

As discussed in extensive detail in the next section of this opinion, the conversion and

intentional interference claims are inextricably intertwined with the breach of contract actions.

See infra pp. 13-24.  Applying the presumption in favor of arbitrability and cognizant of the broad

wording of the arbitration clause at issue, the Court deems these claims arbitrable as well.[7]

_____

[7]  Notably, defendants seek to dismiss the fraud, conversion, intentional interference with
contract and negligent misrepresentation counts only under the gist of the action and economic
loss doctrines.  The Court, however, remains cognizant that "[u]nder § 4 [of the FAA] with

Finally, with respect to Plaintiff's allegation that claims of equitable relief remain outside the arbitration provision, the Court finds partial merit to its claim. Count LXX of the Amended Complaint seeks equitable relief with respect to twenty-one other clients. Specifically, Plaintiff argues that, pursuant to the acknowledgment agreements signed by Defendants, Defendants had an affirmative duty to report on the status of these clients claims to Plaintiff. As Defendants have failed to do so and as Plaintiff has no adequate remedy of law to require the reporting, Plaintiff seeks equitable relief to avoid "imminent harm." (Am. Compl. ¶ 457.) According to the arbitration provision included in the purchase agreements, such claims for equitable relief are, in fact, expressly excluded from its scope. Accordingly, the Court does not find this count to be arbitrable.

To the extent, however, that Plaintiff argues that each of its breach of contract actions essentially requests only specific performance of the purchase agreements and, thus, sounds in an equitable action, its argument fails. A claim for breach of contract requesting only a sum of money is is an action which sounds in law, not equity. Waiters and Waitresses Union, Local 301 v. Paine-Webber, Civ. A. No. 89-1762, 1989 WL 133150, at *3 (E.D. Pa. Nov. 3, 1989). As such,

---

respect to a matter within the jurisdiction of the federal courts, save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not an issue.'" Prima Paint, 388 U.S. at 403-404 (quoting 9 U.S.C. § 4); see also Medtronic AVE, 247 F.3d at 55 ("If the court determines that there is an agreement to arbitrate and that the issue in dispute falls within the scope of the agreement, it must submit the matter to arbitration without ruling on the merits of the case.").

 Both parties have had notice and opportunity to brief issues regarding arbitration. Further, plaintiff specifically argued both that the fraud/negligent misrepresentation claims did not fall within the scope of the arbitration clause and that it is for the arbitrator to decide whether the remaining tort claims set forth a cognizable cause of action. (Pl. Brief in Opposition to Mot. to Dismiss, pp. 16-18). Accordingly, the Court *sua sponte* dismisses these claims pursuant to the arbitration clause.

the arbitration provision applies to the breach of contract actions.

In sum, the Court finds that the following counts must be dismissed pursuant to the arbitration clause:  I, II, III, IV, XII, XIII, XVII, XVIII, XIX, XX, XXV, XXVI, XXVII,  XXVIII, XXIX, XXX, XXXI, XXXII, XXXIII, XXXVII, XXXVIII, XXXIX, XLIII, XLIV, XLV, XLVI, XLVII, XLVIII,  LII, LIII, LIV, LV, LVI, LVII, LVIII, LIX, LX, LXI, LXII, LXIII, LXVII, LXVIII and LXIX.

### B.    Gist of the Action Doctrine

Defendants' next argument invokes the "gist of the action" doctrine.  Pursuant to this doctrine, Defendants contend that because Plaintiff's remaining claims are grounded in the breach of an underlying contract, all of its tort claims are barred.  Considering the prevailing jurisprudence, the Court dismisses fourteen of Plaintiff's tort claims under the gist of the action doctrine.[8]

---

[8]    As an initial matter, the Court must address Plaintiff's allegation that the gist of the action doctrine does not apply because this case is governed by Delaware law.  Plaintiff relies on the choice of law provision contained in each of the agreements, which states, as follows:

> THIS AGREEMENT SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO THE CONFLICT OF LAW RULES OF DELAWARE OR ANY OTHER JURISDICTION.

(Am. Compl. Ex. B.)  A plain reading of this provision suggests that Delaware law only governs the construction and enforcement of the contract.  The gist of the action doctrine, however, is a creature of tort as opposed to contract law.  Tier1 Innovention, LLC v. Expert Technology Group, LP, Civ. A. No. 06-4622, 2007 WL 1377664, at *2 n.1 (E.D. Pa. May 8, 2007) (declining to apply similar choice of law provision to question regarding use of gist of action doctrine); Owen J. Roberts Sch. Dist. v. HTE, Inc., Civ. A. No. 02-7830, 2003 WL 735098 at *3 n.4 (E.D. Pa. Feb. 28, 2003) (same).  Accordingly, the contract's choice of law provision is inapplicable to this issue.

Having so determined, the Court must now turn to Pennsylvania choice of law rules to ascertain the proper applicable law.  Pennsylvania has adopted a "flexible rule which permits

In general, courts are cautious about permitting tort recovery on contractual breaches.

Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).  In eToll, Inc. v. Elias/Savion Advertising,

Inc., 811 A.2d 10 (Pa. Super. Ct. 2002), the Pennsylvania Superior Court emphasized that the

"gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of

contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of

contract claims into tort claims." Id. at 14.[9]  The simple existence of a contractual relationship

between two parties does not preclude one party from bringing a tort claim against the other.

---

analysis of the policies and interests underlying the particular issue before the court." Coram
Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp.2d 589, 594 (E.D. Pa. 1999)
(quoting  Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)).  The analysis is
comprised of two steps.  First, the court must look to see whether a false or true conflict exists
between the competing policies and interests of the relevant states.  LeJeune v. Bliss-Salem, Inc.,
85 F.3d 1069, 1071 (3d Cir. 1996).  In the event of a true conflict, the court must take the second
step and decide "which state has the greater interest in the application of its law." Cipolla v.
Shaposka, 267 A.2d 854, 856 (Pa. 1970).  In fraud cases, the court gives weight to the place
"where the false representations were made and received" if the "plaintiff's action in reliance
took place in the same state." Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F.
Supp2d 589, 594 (E.D. Pa. 1999) (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS §
148(1)).
        In the case at bar, a false conflict exists.  Under both Delaware and Pennsylvania law, the
"gist of the action doctrine" bars tort claims arising solely from a contract between the parties.
Galdieri v. Monsanto Co., 245 F. Supp.2d 636, 650 (E.D. Pa. 2002); Heronemus v. Ulrick, Civ.
A. No. 97C-03-168, 1997 WL 524127 at *3 n.30 (Del. Super. Ct. July 9, 1997) (citing Garber v.
Whittaker, 174 A. 34, 36 (Del. Super. Ct. 1934)).  In such a scenario, it becomes incumbent upon
the Court to determine which state's interests are truly implicated by the cause of action. Coram
Healthcare, 94 F. Supp.2d at 594.  Although Plaintiff is incorporated in Delaware, all of
Defendants and the clients are Pennsylvania residents.  Plaintiff has its principal place of
business in New Jersey.  Finally, all of the alleged tort conduct, including the claimed fraud,
misrepresentations, contract interference and conversion, occurred in Pennsylvania.  (Am.
Compl. ¶¶ 20-457.) Accordingly, the Court finds that Pennsylvania law must govern the
application of the gist of the action doctrine.

   [9]  Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the
action doctrine, both the Pennsylvania Superior Court and multiple United States District Courts
have predicted that it will.  McCloskey v. Novastar Mortgage, Inc., Civ. A. No. 05-1162, 2007
WL 320287, at *6 n. 10 (E.D. Pa. Jan. 29, 2007) (citing cases).

Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir.2001).  The gist of

the action doctrine, however, precludes one from pursuing a tort action for the mere breach of

contractual duties, without any separate or independent event giving rise to the tort.  Air Prods.

and Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp.2d 329, 340 (E.D. Pa. 2003).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out

a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist'

or gravamen of it sounds in contract or tort."  Sunquest Info. Sys., Inc. v. Dean Witter Reynolds,

Inc., 40 F. Supp.2d 644, 651 (W.D. Pa.1999).  To determine whether the gist of the claim sounds

in contract or in tort, the court must determine the source of the duties allegedly breached.

Sunburst Paper, LLC v. Keating Fibre Intern., Civ. A. No. 06-3957, 2006 WL 3097771, at *2

(E.D. Pa. Oct. 30, 2006).  "Tort actions lie for breaches of duties imposed by law as a matter of

social policy, while contract actions lie only for breaches of duties imposed by mutual consensus

agreements between particular individuals."  eToll, 811 A.2d at 14 (quoting Bash v. Bell Tel. Co.,

601 A.2d 825, 829 (Pa. Super. Ct. 1992)).  "In other words, if the duties in question are

intertwined with contractual obligations, the claim sounds in contract, but if the duties are

collateral to the contract, the claim sounds in tort."  Sunburst Paper, 2006 WL 3097771, at *2.

More specifically defined, the doctrine bars tort claims:  (1) arising solely from a contract between

the parties; (2) where the duties allegedly breached were created and grounded in the contract

itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially

duplicates a breach of contract claim or the success of which is wholly dependent on the terms of

a contract.  eToll, 811 A.2d at 19.  Whether the gist of the action doctrine applies in any particular

setting is a question of law.  Bohler-Uddeholm, 247 F.3d at 103.

16

This Court must now ascertain whether or not the gist of the action doctrine bars Plaintiff's multiple tort claims against Defendants.  As noted above, aside from the remaining breach of contract actions, Plaintiff has multiple conversion, interference with contract, fraud and negligent misrepresentation counts.  The Court addresses each individually.

### 1.    Conversion Counts

Conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification."  Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., 974 F. Supp. 822, 844-45 (E.D. Pa. 1997) (citation omitted).  Although "[t]he mere existence of a contract between the parties does not automatically foreclose the parties from raising a tort action[,] . . . a party cannot prevail on its action of conversion when the pleadings reveal merely a damage claim for breach of contract."  Neyer, Tiseo & Hindo, Ltd. v. Russell, No. Civ. 92-2983, 1993 WL 53579, at *4 (E.D. Pa. Mar. 2, 1993) (internal citations omitted).

In Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572 (Pa. Super. Ct. 2003), the Pennsylvania Court addressed the precise question as to when the gist of the action doctrine precludes a claim for conversion.  In that case, homeowners entered into a contract with a construction company to build a home and, in conjunction with the contract, placed funds into an escrow account that would periodically be distributed to the company pursuant to the contractually established schedule.  Id. at 583.  Following the homeowners assuming occupancy of the home, they withheld the last payments, due to alleged breach of contract and a claim that the cost of repairing defects would exceed the remainder of the escrow.  Id.  The construction company claimed both breach of

17

contract and tortious conversion.  <u>Id.</u>  The court, however, held that the "tort and breach of

contract claims [were] inextricably intertwined [and that] the success of the conversion claim

depend[ed] entirely on the obligations as defined by the contract."  <u>Id.</u> at 584.  As a result, the

"gist of the action doctrine" barred the claim for conversion.  <u>Id.</u>; <u>see also</u> <u>Freedom Med. Inc. v.</u>

<u>Royal Bank of Canada</u>, Civ. A. No. 04-5626, 2005 WL 3597709, at *8-9 (E.D. Pa. Dec. 30, 2005)

(applying the gist of the action doctrine to conversion claims when entitlement to the chattel at

issue is predicated solely on the agreement entered into by the parties).

Construing the allegations of the Amended Complaint in the light most favorable to

Plaintiff, it remains evident that the breach of contract and the conversion claims are inextricably

intertwined.  For each of the conversion claims at issue, there is an accompanying breach of

contract claim which alleges that a particular client entered into a purchase agreement with

Plaintiff and that Defendants entered into an acknowledgment to the purchase agreement which

incorporated certain terms of the purchase agreement, including a provision to notify and turn

over to Plaintiff its interest in any proceeds from any verdict or settlement of any litigation.  (Am.

Compl. ¶¶ 9, 12 and Counts V, VIII, XXII, XXXIV, XL, XLIX, LXIV.)  These counts go on to

assert that although a settlement or verdict occurred in the case, Defendants failed to either notify

Plaintiff of the settlement or verdict or turn over the enumerated funds to Plaintiff.  (<u>Id.</u>)

Subsequently, in each of the conversion claims, Plaintiff makes the cursory allegation that

Defendants converted the identical sum of money as set forth in the previous breach of contract

claim.  (<u>Id.</u> at Counts VI, IX, XXIII, XXXV, XLI, L LXV.)  According to these facts, Plaintiff's

conversion claim is based on a duty that arose solely out of the parties' written contract, meaning

that the contract is central to the conversion claim.  Absent the various contracts to which the

parties mutually assented, Defendants were under no obligation to perform, or not perform, any of the actions that form the basis of Plaintiff's conversion claims.  Accordingly, we grant Defendants' motion to dismiss these claims.  See Jodek Charitable Trust, R.A. v. Vertical Net Inc., 412 F. Supp.2d 469, 480 (E.D. Pa. 2006) (granting motion to dismiss tort claims based on gist of the action).

> **2.      Intentional Interference With Contract Claims**

Pennsylvania courts, following the Restatement (Second) of Torts, define the tort of intentional interference with existing contractual relations as:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss to the other from the third person's failure to perform the contract.

Binns v. Flaster Greenberg, P.C., 480 F. Supp. 2d 773, 778 (E.D. Pa. 2007) (quoting Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978)).  In order to prevail on a claim for interference with contractual relations, the plaintiff must plead and prove four elements: (1) the existence of a contractual relation; (2) the defendant's purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damages resulting from the defendant's conduct. Gundlach v. Reinstein, 924 F. Supp. 684, 693 (E.D. Pa. 1996).

Plaintiff attempts to argue that two sets of contracts are at issue in this case:  the contract between Plaintiff and the clients and the contract between Plaintiff and Defendants.  The intentional interference of contract claims, it contends, are premised on Defendants' interference

with the agreements that existed between Plaintiff and the various clients.

A closer review of the allegations of the Amended Complaint, however, reveals that Plaintiff is simply trying to disguise its contract action as a tort claim. The two agreements at issue are interdependent, as the acknowledgment agreements signed by the Defendants incorporate all of the terms of the purchase agreements signed by the clients. It is precisely these acknowledgment agreements that give rise to Defendants' obligation to turn over the requested sums of money to Plaintiff. Absent these contracts, no such duty on the part of Defendants would exist.

The Amended Complaint makes no effort to conceal this fact. Each of the interference with contract counts at issue are structured identically. Prior to each of these counts, Plaintiff sets forth a breach of contract count against Defendants followed by a conversion count, alleging that Defendants failed to turn over certain sums of money due to Plaintiff pursuant to a contractual agreement between Plaintiff and Defendants. The ensuing interference with contract count then puts forth a bald allegation that Defendants intentionally interfered with the contractual relationship between Plaintiff and the client by diverting money owed to Plaintiff by the client and that no justification existed for the interference. The count goes on to demand the precise dollar figure set forth in the immediately preceding breach of contract count, together with punitive damages. (Am. Compl. Counts VII, X, XXIV, XXVI, XLII, LI, and LXVI.) At no point does the Amended Complaint state that Defendants have somehow withheld money from the clients, preventing them from satisfying their pecuniary obligation to Plaintiff. Nor does the Amended Complaint suggest that Defendants counseled their clients to breach their contractual duties to pay certain sums to Plaintiff. Rather, it merely alleges that Defendants "diverted" sums owed to

Plaintiff.  But for Defendants' own contractual arrangement with Plaintiff, their actions were entirely appropriate.  As the Court declines to allow Plaintiff to bootstrap this tort claim onto a pure contract claim, the motion to dismiss these seven interference with contract counts is granted.

### 3.        Fraud and Negligent Misrepresentation Counts

The final counts that Defendants seek to dismiss under the gist of the action doctrine involve allegations of fraud.  Those remaining three claims allege as follows:

Count XIV - Defendants fraudulently induced Plaintiff into entering into the purchase agreement with Saood Abney based on the false representation that Abney had uninsured motorist benefits through a policy of insurance with Allstate Insurance Company.

Count XV - Defendants fraudulently induced Plaintiff to enter into the purchase agreement with Eckloff Wardlaw based on the false misrepresentation that Wardlaw had uninsured motorist benefits through a policy of insurance with Allstate Insurance Company.

Count XVI - Defendants fraudulently induced Plaintiff to enter into the purchase agreement with Kevin Wilson based on the misrepresentation that workers compensation insurance existed available to Wilson if he prevailed.

(Am. Compl. Counts XIV, XV and XVI)  Plaintiff responds that the gist of the action doctrine fails to apply to such claims because they do not arise from the contract and do not constitute a duplicative means of recovery for breach of contract damages.

In eToll, the Pennsylvania Superior Court explicitly recognized that Pennsylvania law has "*not* carved out a categorical exception for fraud, and [has] not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself." eToll, 811 A.2d at 19.  Rather, as the court explained, "the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties.  If so, then the alleged fraud is

generally held to be merely collateral to a contract claim for breach of those duties.  If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties."  Id.

Jurisprudence confronting this issue has battled with whether the gist of the action doctrine should apply to a particular fraud or negligent misrepresentation case.  Where the fraud or negligent misrepresentation clearly arose from the contract, courts have been quick to apply the gist of the action doctrine.  See Horizon Unlimited, Inc. v. Silva, Civ. A. No. 97-7430,1998 WL 88391, at *4-5 (E.D.Pa. Feb. 26, 1998) (holding that gist of the action doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature); Factory Mkt., Inc. v. Schuller, Inc., 987 F. Supp. 387, 394-95 (E.D. Pa. 1997) (finding that gist of the action doctrine barred fraud and negligence claims against roofer who agreed to repair a chronically leaking roof and repeatedly attempted to repair it, even though he knew from the outset that it was beyond repair, as the obligation to make the roof watertight was imposed by the contract, not in tort).  Where, however, the fraud concerned an act collateral to the parties' contract, such as a fraudulent inducement to enter the contract, courts have been less willing to bar the claims. "The distinction between fraud in the inducement and fraud in the performance claims with regard to the gist of the action doctrine is crucial.  This is because fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists."  Air Prods. and Chems., 256 F. Supp.2d at 341.

Even this principle, however, does not apply a clear-cut rule, as courts have focused on the specific factual circumstances in determining whether to bar a fraud in the inducement or negligent misrepresentation claim under the gist of the action doctrine.  Compare Tier1

Innovation, LLC v. Expert Technology Group, LP, Civ. A. No. 06-4622, 2007 WL 1377664, at *4 (E.D. Pa. May 8, 2007) (dismissing allegations of fraud in the inducement and negligent misrepresentation on grounds that they were both "inextricably intertwined" with the alleged failure to perform under the contract, as the claims pertain to plaintiff's representations regarding its expertise and ability to perform its duties under the agreement between the parties); Sullivan v. Charwell Inv. Partners, LP, 873 A.2d 710, 718-719 (Pa. Super. Ct. 2005) (holding that tort claims relating to appellee's fraudulent promises that induced appellant to enter employment contract would not be barred because they were collateral to the contract) with Williams v. Hilton Group, PLC, 93 Fed. Appx. 384, 386-387 (3d Cir. 2004) (concluding that where defendants induced plaintiffs into committing to buying gaming assets for a certain price on an exclusive basis while secretly marketing properties to other buyers, the gravamen of the fraud in the inducement claim sounded in contract and was barred by the gist of the action doctrine); Penn City Investments, Inc. v. Soltech, Civ. A. No. 01-5542, 2003 WL 22844210, at *3-4 (E.D. Pa. Nov. 25, 2003) (dismissing, on summary judgment, fraudulent inducement claim based on pre-contractual discussions because it was so highly intertwined with its cause of action for breach of contract).

In any event, courts have shown some reluctance to dismiss claims for fraud in the inducement or negligent misrepresentation early in the litigation. See, e.g., Longview Dev. LP v.Great Atl. & Pac. Tea Co., Inc., Civ. A. No. 02-7422, 2004 WL 1622032, at *4 (E.D. Pa. 2004) (noting courts' hesitation to dismiss claims for fraud in the inducement based on gist of the action doctrine early in the litigation); Little Souls, Inc. v. State Auto Mut. Ins. Co., No. 03-5722, 2004 WL 503538, at *3 (E.D. Pa. March 15, 2004) (allowing fraud claim to survive motion to dismiss even though the court conceded that after discovery the gist of the action doctrine may bar the

23

claim); <u>Weber Display & Packaging v. Providence Washington Ins. Co.</u>, No. 02-7792, 2003 WL 329141, at *4 (E.D. Pa. Feb. 10, 2003) (declining to decide whether misrepresentation claim is barred by gist of action doctrine at motion to dismiss stage); <u>Foster v. Northwestern Mut. Life</u>, Civ. A. No. 02-2211, 2002 WL 31991114, at *3 (E.D. Pa. July 26, 2002) (declining to decide, without discovery, whether gist of action doctrine barred fraud in the inducement and misrepresentation claims).

Absent further discovery, this Court cannot accurately determine whether Plaintiff's claims of fraudulent inducement are collateral to or interwoven in the contract with Defendants. Plaintiff's allegations that it would not have entered the purchase agreements with the clients but for the Defendants' fraudulent misrepresentations of insurance coverage may indeed fall outside the context of the acknowledgment agreement and may implicate the broader social policies governed by a tort action.[10]  On the other hand, Defendants may establish that the alleged fraudulent statements were specifically covered by the subsequent contract and, thus, any tort claim based on them should be barred by the gist of the action doctrine.  It is precisely that uncertainty, that makes it inappropriate to dismiss the fraud counts before the parties have an opportunity to conduct discovery.[11]

---

[10]  The Court takes particular note that Plaintiff only alleges fraud in five of twenty-five Purchase Agreements and that one of the claims of fraud is not even tied to any breach of contract count, suggesting that the claims are perhaps not barred by the gist of the action doctrine.

[11]  Defendants also assert the economic loss doctrine as a defense to the tort claims in the Amended Complaint. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995).  As the Court dismisses all of the conversion and intentional interference with contract counts under the gist of the action doctrine, we do not address the applicability of the economic loss doctrine to these claims.

C.    **Amount in Controversy**

In a final effort to dismiss the remainder of the Amended Complaint, Defendants contend that the remaining counts do not meet the requisite amount in controversy for federal diversity jurisdiction.  Accordingly, they claim that this case must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1).  See Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdiction of a federal court over the subject matter of the complaint.).

In Samuel-Bassett v. KIA Motors Am., Inc. 357 F.3d 392 (3d Cir. 2004), the Third Circuit set forth the standard necessary to determine whether an action meets the amount-in-controversy requirement.  The "legal certainty" test is "whether from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount. . . . If not, the suit must be dismissed."  Id. at 397 (quoting St. Paul Mercury Indemnity Co. v. Reed Cab Co., 303 U.S. 283, 58 S. Ct. 586 (1938)).  "The rule does not require the removing defendant to prove to a legal certainty the plaintiff *can* recover $75,000 - a substantially different standard."

---

As to the fraud and negligent misrepresentation counts, it is well-established in this Circuit that the economic loss doctrine prohibits such claims, including intentional torts, when economic losses are incurred from breach of contractual obligations.  Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir. 2002).  Nonetheless, the Third Circuit has carved out a "limited exception to the economic loss doctrine for fraud-in-the-inducement claims if the fraud is extraneous to the contract and not interwoven with the breach of contract."  Foster, 2002 WL 31991114, at *2 (citing Werwinski, 286 F.3d at 676).  For the same reasons as set forth above under the gist of the action discussion, the Court declines to dismiss the fraud and negligent misrepresentation claims under the economic loss doctrine.

Valley v. State Farm Fire and Cas. Co., 504 F. Supp.2d 1, 4 (E.D. Pa. 2006).

To determine the amount in controversy, claims for punitive damages may be aggregated with compensatory damages in determining the amount in controversy, unless they are "patently frivolous and without foundation."  Golden ex rel. Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) (quotations omitted).  Punitive damages claims are patently frivolous if unavailable as a matter of state substantive law.  Id.  In addition, it is well settled that where reasonable attorneys' fees are part of the statutory action and have been requested by plaintiffs, they can be counted as part of the amount in controversy.  Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997); 14A Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE, § 3712, 176-178 (1985).

It is far from a legal certainty that Plaintiff cannot recover more than $75,000.  Plaintiff's remaining breach of contract counts allege compensatory damages in the amount of $37,131.[12] While that number, standing alone, does not meet the requisite amount in controversy, Plaintiff also seeks attorneys fees with regards to all but one of the breach of contract counts.  As this Court has noted before, "[i]t would certainly not be unreasonable for attorney's fees to range between $5,000 and $10,000 for compensatory damages that amount to $45,000."  Werwinski v. Ford Motor Co., Civ. A. No. 00-943, 2000 WL 375260, at *3 (E.D. Pa. April 11, 2000), aff'd, 286

---

[12]  Defendants allege that the claimed compensatory damages against Defendants Marc Weinberg and the law firm Saffren & Weinberg, LLP is even less than that against Kenneth Saffren since the Amended Complaint alleges in two of the breach of contract counts that "Saffren breached his agreement with U.S. Claims, Inc." and does not claim that Saffren entered into these contracts on behalf of Attorney Weinberg or Saffren & Weinberg, LLP.  (Am. Compl. ¶¶ 70 and 87.)  Nonetheless, each of these counts contains an assertion of joint and several liability against all three defendants.  (Id. at Counts VIII and XI.)

F.3d 661 (3d Cir. 2002).  Finally, Plaintiff alleges punitive damages in "an amount in excess of $75,000."[13]  At best, Plaintiff would need a punitive damages award of only $30,000 in order to meet the statutory minimum – less than the equivalent of the compensatory award.  Certainly, such an award would not be unreasonable or disproportionate under either Pennsylvania or Delaware law.  See Werwinski, 2000 WL 375260, at *4 (citing cases for proposition that "[i]t is not uncommon for Pennsylvania Courts to allow punitive damages that are at least as large as the award of compensatory damages.");  Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 803 (Pa. 1989) (holding that punitive damages in Pennsylvania need not bear a reasonable relationship to the value of compensatory damages); Sheats v. Bowen, 318 F. Supp. 640, 646 (D. Del. 1970) (finding a punitive damages award of more than one and a half times the compensatory award to not be unreasonably disproportionate).  While subsequent discovery may prove that the claims for punitive damages are patently frivolous, it is impossible, at this early stage of the proceedings, for the Court to conclusively find that Plaintiff's potential damages do not exceed $75,000.  Accordingly, the Court declines to dismiss the remaining counts of the Amended Complaint.[14]

### D.   Stay of the Remaining Counts

In a final argument, defendants contend that, in the event the Court retains jurisdiction of any counts of this complaint, the action should be stayed pending arbitration of the proceedings.

---

[13]   Punitive damages are recoverable for allegations of fraud under both Pennsylvania and Delaware law.  Olkowski v. Prudential Ins. Co., 584 F. Supp. 1140, 1142 (E.D. Pa. 1984); Stephenson v. Capano Development, 462 A.2d 1069, 1076-77 (Del. 1983).

[14]   The parties dispute the precise value of the equitable relief count.  As the Court finds the amount in controversy to have been met by aggregation of the claims for compensatory damages, attorneys fees and punitive damages, we need not address this claim.

The Third Circuit has explicitly addressed this question with the following mandate:

> [T]he plain language of § 3 [of the FAA] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration. The directive that the Court "shall" enter a stay simply cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach. On the contrary, the statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court "shall" upon application stay the litigation until arbitration has been concluded.

Lloyd v. Hovensa, LLC., 369 F.3d 263, 269 (3d Cir. 2004); see also Griffen v. Alpha Phi Alpha, Civ. A. No. 06-1735, 2007 WL 707364, at *9 n.14 (E.D. Pa. March 2, 2007) (declining to dismiss non-arbitrable claims under dictates of Third Circuit in Lloyd); Heller v. Deutsche Bank AG, Civ. A. No. 04-3571, 2005 WL 665052, at *6 (E.D. Pa. March 17, 2005) (citing Lloyd for proposition that "upon application of one of the litigators, a court must stay the trial of the action if it finds that a particular issue is arbitrable under a written agreement.").

In the case at bar, the Court has found the majority of the claims at issue to be arbitrable. As defendants have expressly requested a stay for the remaining claims, this Court has no choice but to grant such relief.

## IV.   CONCLUSION

For all of the foregoing reasons, this Court dismisses 14 counts under the gist of the action doctrine and 43 counts under the arbitration provision.  The remaining 13 counts shall be stayed pending resolution of the arbitrable claims.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. CLAIMS, INC. | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  07-0543 |
| SAFFREN & WEINBERG, LLP., | : | |
| KENNETH S. SAFFREN, ESQUIRE | : | |
| and MARC A. WEINBERG, ESQUIRE | : | |

### ORDER

AND NOW, this  29th  day of *November*, 2007, upon consideration of Defendants' Motion to

Dismiss Amended Complaint or, in the Alternative, Motion to Stay Proceedings (Docket No. 14) and

the Response of Plaintiff (Docket No. 15), it is hereby ORDERED as follows:

1.  Counts I, II, III, IV, XII, XIII, XVII, XVIII, XIX, XX, XXV, XXVI, XXVII,  XXVIII, XXIX, XXX, XXXI, XXXII, XXXIII, XXXVII, XXXVIII, XXXIX, XLIII, XLIV, XLV, XLVI, XLVII, XLVIII,  LII, LIII, LIV, LV, LVI, LVII, LVIII, LIX, LX, LXI, LXII, LXIII, LXVII, LXVIII and LXIX are **DISMISSED** pursuant to the arbitration agreement;

2.  Counts VI, VII, IX, X, XIII, XXIV, XXXV, XXXVI, XLI, XLII, L, LI, LXV and LXVIVI are **DISMISSED** under the gist of the action doctrine; and

3.  Defendants' Motion to Dismiss Counts V, VIII, XI, XIV, XV, XVI, XXI, XXII, XXXIV, XL, XLIX, LXIV and LXX is **DENIED**.  The action involving these counts is **STAYED** pending resolution of the arbitrable claims.  Within thirty (30) days after the arbitration is concluded, Plaintiff shall file a motion to lift the stay, along with a Second Amended Complaint setting forth those causes of action that remain to be litigated consistent with this Order.

BY THE COURT:


*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.