IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. CLAIMS, INC. | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  07-0543 |
| SAFFREN & WEINBERG, LLP., | : | |
| KENNETH S. SAFFREN, ESQUIRE | : | |
| and MARC A. WEINBERG, ESQUIRE | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                  July 22, 2009

Currently pending before the Court is the Motion of Defendant Marc A. Weinberg, Esquire to Dismiss Plaintiff's Second Amended Complaint.  For the following reasons, it is ordered that the Motion be denied.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, U.S. Claims, Inc., is a corporation engaged in the business of purchasing interests in the proceeds of individuals' anticipated personal injury claims. (Sec. Am. Compl. ¶ 7.)  It provides small loans and only receives payment if an individual plaintiff recovers.  (Id.)  Pursuant to the contractual obligations, each of the personal-injury clients (the "clients") are required to sign a purchase agreement setting forth the rights and liabilities of each party to the contract.  (Id. at ¶ 10 and Ex. B.)

All of the purchase agreements at issue, in this case, contain several of the same provisions. First, the agreement states that the client agrees to a continuing duty to deliver to U.S. Claims all

notices, instructions, or agreements regarding the claim. Second, he or she agrees to pursue the claim and not withdraw, discontinue, or end the claim prior to any verdict or settlement. (Id. at ¶ 10.) Third, the client agrees that if he or she becomes involved in a bankruptcy proceeding prior to U.S. Claims' receipt of its interests in the proceeds, he or she shall notify the bankruptcy court of U.S. Claims' interests in those proceeds. (Id. at ¶ 11.)

The agreements further provide multiple definitions of "default." First, default could occur by the failure of the client or his/her attorney to pay the interest in the proceeds within thirty days after a verdict, order, or settlement with respect to the client's claim, and from when the proceeds are actually received by the client or his/her attorney. (Id. at ¶ 12.) Further, default could occur by failure to conform or comply with any of the conditions, provisions, or promises contained in the agreement and such non-compliance continues for a period of ten days. (Id.) Finally, default could occur if U.S. Claims discovers any material misrepresentation or inaccuracy in any representation or warranty made by the client to U.S. Claims in the purchase agreement. (Id.) In addition, the agreement contains a provision for equitable relief in the event of breach. (Id. at ¶ 13.)

Pursuant to the power of attorney provision of the agreement, Darryl Levine, an officer of U.S. Claims, Inc., is appointed as "the lawful attorney in fact" of the plaintiff in the personal injury claim to accept, endorse, and deliver for deposit to U.S. Claims and to credit payment of its interests in the proceeds of any negotiable interest received from any company as payment of the portion of the proceeds of the personal injury plaintiff from the claim. (Id. at ¶ 14.) Each client signs an authorization for his or her attorney to pay U.S. Claims from proceeds of the claim. (Id. at ¶ 15.)

In connection with this contractual arrangement, the attorney for the personal injury client must also sign an accompanying acknowledgment agreement, which incorporates, by reference, all

the terms and conditions of the purchase agreement.  (Id. at ¶ 7 and Ex. A.)  By virtue of this acknowledgment agreement, the attorney must certify that he has no knowledge of the client having previously sold, transferred, or assigned any interest in the claim or the proceeds of the claim to any other person or entity except U.S. Claims, Inc.  (Id. at ¶ 8.)  Further, the attorney must notify U.S. Claims of any verdict, award, settlement, discontinuance, or ending with respect to the claim as soon as it occurs and notify U.S. Claims, Inc. when the proceeds are received from either the verdict, award, or settlement.  (Id.)  Moreover, the attorney has a duty to notify U.S. Claims, Inc. if: (1) the client discharges him as counsel; (2) he becomes aware of any sale, transfer or assignment of any interest in the claims or the proceeds of the claim by the plaintiff to any other person or entity; or (3) the attorney becomes aware of misrepresentation, fraud or deception regarding the claim or the agreement with U.S. Claims committed by the client.  (Id.)  Finally, the attorney agrees to withhold any funds owed to U.S. Claims pursuant to the purchase agreement out of the proceeds received from the personal injury claim by the client.  (Id.)

The acknowledgment agreement also provides that U.S. Claims has the right to request in writing about the status of the matter.  (Id. at ¶ 9.)  Failure to respond in writing to U.S. Claims, Inc. within thirty days of such a request is deemed an acknowledgment by the attorney that there had been no verdict, award, settlement, discontinuance, or ending with respect to the claim, that proceeds have not been received from either verdict, award and/or settlement, and that counsel is still counsel in the matter and has no knowledge of the client selling, transferring, or assigning any interest in the claim or proceeds from the claim to any other person or entity or committing any representation, fraud or deception regarding the claim or the purchase agreement.  (Id. at ¶ 9.)

Defendants Kenneth S. Saffren, Esq., Marc A. Weinberg, Esq., and Saffren & Weinberg,

LLP represented, as attorneys, many of the clients who entered into purchase agreements with U.S. Claims.  (Id. at ¶ 16.)  These Defendants purportedly signed the authorizations required by U.S. Claims.  (Id. ¶ 17.)

On March 28, 2007, Plaintiff U.S. Claims filed an Amended Complaint involving twenty-five of these contractual agreements with clients made from December 14, 2001 to October 22, 2004.  (Am. Compl. ¶¶ 20-457.)  Based on Defendants' accompanying acknowledgment agreements, and pursuant to the payment schedule set forth in the acknowledgments, Plaintiff sought an amount in excess of $150,000, plus equitable relief.  The Amended Complaint contained a total of seventy counts, alleging that Defendants breached their contractual duties and/or committed tortious violations by:  (1) failing to remit and/or converting sums due to Plaintiff; (2) negligently or fraudulently misrepresenting the availability of insurance for some of the clients; (3) failing to advise of their discharge in certain suits; (4) failing to advise of certain settlements or verdicts; and (5) failing to report on the status of the various personal injury claims in which Plaintiff had an interest.  (Id.)

On April 10, 2007, Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, Stay the Proceedings.  By way of Memorandum and Order dated November 29, 2007, the Court dismissed fourteen counts under the gist of the action doctrine, dismissed forty-three counts pursuant to a binding arbitration agreement, and stayed the action regarding the remaining thirteen counts pending resolution of the arbitrable claims.  Memorandum and Order, U.S. Claims, Inc. v. Saffren & Weinberg, et al., Civ. A. No. 07-542 (Nov. 29, 2007).

On April 13, 2009, following the conclusion of arbitration and resolution of the arbitrable

claims between the parties, Plaintiff filed a Second Amended Complaint.[1]  This latest iteration of the Complaint contains twelve counts, as follows:

> Count 1 - Breach of contract against all Defendants based on the personal injury claim of Eckloff Wardlaw.
>
> Count 2 - Breach of contract against all Defendants based on the personal injury claim of Saood Abney.
>
> Count 3 - Breach of contract against all Defendants based on the personal injury claim of Kevin Wilson.
>
> Count 4 - Fraud against all Defendants based on the personal injury claim of Saood Abney.
>
> Count 5 - Fraud against all Defendants based on the personal injury claim of Eckloff Wardlaw.
>
> Count 6 - Fraud against all Defendants based on the personal injury claim of Kevin Wilson.
>
> Count 7 - Breach of contract against all Defendants based on the personal injury claim of Raymond Ehly.
>
> Count 8 - Breach of contract against all Defendants based on the personal injury claim of Angel Carey.
>
> Count 9 - Breach of contract against all Defendants based on the personal injury claim of Amy Lewis.
>
> Count 10 - Breach of contract against all Defendants based on the personal injury claim of Wayne Syrkett
>
> Count 11 - Breach of contract against all Defendants based on the personal injury claim of John Neal.
>
> Count 12 - Equitable relief claim against all Defendants based on personal injury claims of twenty-one other individuals.

(Sec. Am. Compl ¶¶ 20-128.)

---

[1] The Second Amended Complaint was deemed filed on April 23, 2009, by Order of this Court.

Defendant Marc A. Weinberg, Esquire now individually seeks, by way of Motion filed on May 12, 2009, dismissal of the entirety of the action against him based primarily on his status as a limited liability partner with Saffren & Weinberg, LLP. Plaintiff filed a Response on June 3, 2009. The Court now turns to a discussion of these issues.

**II.     STANDARD OF REVIEW FOR A MOTION TO DISMISS**

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following the basic dictates of Twombly, the Supreme Court, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown an entitlement to relief. Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 231-33 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" Id. at 234 (quoting Twombly, 127 S. Ct. at 1965)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., Civ. A. No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendant Weinberg's Motion seeks dismissal of the entirety of the Second Amended Complaint against him on two grounds. First, he claims that all of the authorizations in the breach of contract counts were signed by Defendant Kenneth Saffren and all misrepresentations that form the basis of the fraud counts were made by Saffren. Because Weinberg is Saffren's partner in a limited liability partnership, he claims that he cannot be individually responsible for any contracts entered into or misrepresentations made by his partner. Second, Defendant Weinberg contends

that, even if he could be held liable for the fraud and equitable relief claims, the Complaint must be dismissed for lack of diversity jurisdiction. The Court addresses each claim separately.

### A. Breach of Contract/Fraud Liability

The parties, in this case, agree that Defendant Saffren & Weinberg has been established as a limited liability general partnership under the Pennsylvania Limited Liability Partnership Act ("LLP Act"), 15 Pa.C.S. § 8201, *et seq.* Pursuant to Pennsylvania's LLP Act, a general or limited partnership may register under the Limited Liability Partnership Act as either a general or limited partnership with limited liability. 15 PA. CONS. STAT. § 8201(a). "In the case of a limited partnership, the limited partners already enjoy more complete limited liability than is available in a registered limited liability partnership, but registering under this chapter will limit the liabilities of general partners to the extent set forth in 15 Pa.C.S. §§ 8204 and 8205." Id. amended committee comment (2001). Once registration under the subchapter is in effect, "the partnership shall be governed by the provisions of this subchapter and, to the extent not inconsistent with this subchapter, Chapter 83 (relating to general partnerships)." Id. at § 8201(c).

Section 8204 significantly restricts the personal liability of a general partner in a limited liability partnership, as follows:

> **(a) General rule.** – Except as provided in subsection (b), a partner in a registered limited liability partnership shall not be individually liable directly or indirectly, whether by way of indemnification, contribution or otherwise, for debts and obligations of, chargeable to, the partnership, whether sounding in contract or tort or otherwise, that arise from any negligent or wrongful acts or misconduct committed by another partner or other representative of the partnership while the registration of the partnership under this subchapter is in effect.

15 PA. CONS. STAT. § 8204. In the 2001 Amended Committee Comments to section 8204, the Advisory Committee explained that:

8

> Subsection (a) will provide protection from liability without regard to whether the negligent or wrongful acts or misconduct are held to give rise to a claim sounding in contract or in tort, and also without regard to whether the claim arises directly or indirectly and expressly or by implication.

Id. amended committee comment (2001). It further indicated that "[a]lthough the Committee chose to use the phrase 'negligent or wrongful acts or misconduct' because of its use in other contexts in Pennsylvania law, the Committee believes that it should include . . . 'errors, omissions, negligence, incompetence, or malfeasance.'"  Id.

Defendant Weinberg argues that he did not sign any of the authorizations relating to the eight clients of Defendant that remain at issue in this matter and made none of the misrepresentations that are the bases of the fraud counts; rather, the agreements were signed and the misrepresentations made by Defendant Saffren, Weinberg's partner. In turn, he asserts that, pursuant to the Pennsylvania LLP Act, he cannot be individually liable for any claims arising under those contracts.

Defendant's argument, however, grants too broad of scope to the limitation of liability. As a general rule in Pennsylvania, all partners in a general partnership are liable, "(1) [j]ointly and severally for everything chargeable to the partnership under sections 8325 (relating to wrongful act of partner) and 8326 (relating to breach of trust by partner)" and "(2) [j]ointly for all other debts and obligations of the partnership but any partner may enter into a separate obligation to perform a partnership contract." 15 PA. CONS. STAT. § 8327; see also TPS Techs., Inc. v. Rodin Enters., Inc., 816 F. Supp. 345, 350 (E.D. Pa.1993) ("all general partners of a Pennsylvania limited partnership are liable for the debts and obligations of the partnership.") The Pennsylvania LLP Act preserves this liability "to the extent not inconsistent with this subchapter." 15 PA. CONS. STAT. § 8201(c)). Section 8204 only provides protection from liability to a partner for debts and obligations, whether

9

sounding in contract or tort, "that arise from any negligent or wrongful acts or misconduct committed by another partner." A partner still remains liable "[f]or any debts or obligations of the partnership . . . arising from any cause other than those specified in subsection (a)." Id. Taken together, these provisions suggest that a limited liability partner is liable for the partnership's breach of contract executed by another partner and not the result of any error, omission, negligence, incompetence, or malfeasance by that partner. See In re Peters, Civ. A. No. 03-11077, 2004 WL 1291125, at *1 (Bankr. E.D. Pa. May 7, 2004) (noting that "[a]s one of the partners of the limited partnership, [the defendant] is liable for the contract obligations of the Partnership not arising from any negligent or wrongful acts or misconduct of another partner or representative of the Partnership.")

      Counts I, II, III, VII, VIII, IX, X, and XI of the present Complaint allege that Defendant Saffren, on behalf of himself, Weinberg, and Saffren & Weinberg, entered into acknowledgments of various purchase agreements. (Sec. Am. Compl. ¶¶ 23, 28, 37, 66, 78, 88, 99, 110.) The mere fact that Defendant Weinberg did not sign the contracts does not absolve him from liability where Saffren signed the contracts on behalf of the partnership and the partnership breached those contracts. Moreover, while the Court notes that several of the counts reference actions by only Saffren in breach of the contracts, all of the breach of contract counts are explicitly brought against all three Defendants. At this juncture of the litigation, and taking the allegations of the Second Amended Complaint as true, the Court cannot discern whether the breach of contract counts rest solely on wrongful acts of Defendant Saffren, with no involvement from Defendants Weinberg or Saffren & Weinberg, or whether they are attributable to the partnership as a whole, thus making both partners individually liable.

The Motion to Dismiss the fraud counts (Counts IV, V and VI) requires the same resolution. Section 8204(b)(2)(i) states that the limited liability provision of the Act does not affect the liability of a partner individually "for any negligent or wrongful acts or misconduct committed by him or by any person under his direct supervision and control." 15 PA. CONS. STAT. § 8204(b)(2)(i). All three fraud counts allege either that Saffren, Weinberg, and Saffren & Weinberg falsely misrepresented to Plaintiff that their client maintained uninsured motorist benefits, (Sec. Am. Compl. ¶¶ 45, 51), or that Saffren, acting on behalf of and as an agent of Saffren & Weinberg, misrepresented to Plaintiff that workers compensation insurance existed on behalf of their client. (Id. ¶ 60.) Broadly reading these allegations and their reasonable inferences in the light most favorable to Plaintiff, the Court must find that the Second Amended Complaint sufficiently alleges that Defendant Weinberg committed or participated in the fraudulent misrepresentations at issue.

Given these findings, the Court must deny the Motion to Dismiss these Counts based on Pennsylvania's Limited Liability Partnership Act. Should discovery later disclose that the breaches of contract were caused or the fraudulent misrepresentations made by the "wrongful acts" of solely Defendant Saffren, Defendant Weinberg may re-raise this issue by a motion for summary judgment.

### B. Amount in Controversy

In an alternative argument, and raised only by means of a three-sentence footnote, Defendant Weinberg seeks dismissal of the Second Amended Complaint against him under Federal Rule of Civil Procedure 12(b)(1), for lack of diversity jurisdiction. See Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdiction of a federal court over the subject matter of the complaint). Specifically, Weinberg asserts that the amount at issue for the three fraud counts plus

the count for equitable relief is just $12,788, which is "woefully short" of the $75,000 threshold set forth in the federal rules, even when attorney's fees and punitive damages are considered.  (Def. Weinberg's Mot. to Dismiss 5, n.1.)  The Court disagrees.

In Samuel-Bassett v. KIA Motors Am., Inc. 357 F.3d 392 (3d Cir. 2004), the Third Circuit set forth the standard necessary to determine whether an action meets the amount-in-controversy requirement.  The "legal certainty" test is "whether from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount. . . . If not, the suit must be dismissed."  Id. at 397 (quoting St. Paul Mercury Indem. Co. v. Reed Cab Co., 303 U.S. 283, 58 S. Ct. 586 (1938)).  "The rule does not require the removing defendant to prove to a legal certainty the plaintiff *can* recover $75,000 - a substantially different standard."  Valley v. State Farm Fire and Cas. Co., 504 F. Supp. 2d 1, 4 (E.D. Pa. 2006).

To determine the amount in controversy, claims for punitive damages may be aggregated with compensatory damages in determining the amount in controversy, unless they are "patently frivolous and without foundation."  Golden ex rel. Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) (quotations omitted).  In addition, it is well settled that where reasonable attorneys' fees are part of the statutory action and have been requested by plaintiffs, they can be counted as part of the amount in controversy.  Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997); 14B Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE, § 3712, 176-178 (1985).

In this case, it is far from a legal certainty that Plaintiff cannot recover more than $75,000.  As a primary matter, Defendant Weinberg's argument assumes that the breach of contract counts

will be dismissed against him, which, as noted above, is not the case. As such, we must consider them in assessing amount in controversy. Plaintiff's breach of contract counts allege compensatory damages of close to $34,542, and the fraud counts, for which damages would be duplicative of the breach of contract actions, seek close to $13,000. While these numbers, standing alone, do not meet the requisite amount in controversy, Plaintiff also seeks attorneys fees with regards to all but one of the breach of contract counts. As this Court has noted before, "[i]t would certainly not be unreasonable for attorney's fees to range between $5,000 and $10,000 for compensatory damages that amount to $45,000." Werwinski v. Ford Motor Co., Civ. A. No. 00-943, 2000 WL 375260, at *3 (E.D. Pa. Apr. 11, 2000), aff'd, 286 F.3d 661 (3d Cir. 2002).

Finally, Plaintiff alleges punitive damages in "an amount in excess of $75,000."[2] Punitive damages in Pennsylvania need not bear a reasonable relationship to the value of compensatory damages. Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 803 (Pa. 1989). At best, Plaintiff would need a punitive damages award of only $30,000 to $40,000 in order to meet the statutory minimum – near the equivalent of the compensatory award. Certainly, such an award would not be unreasonable or disproportionate under Pennsylvania law. See Werwinski, 2000 WL 375260, at *4 (citing cases for proposition that "[i]t is not uncommon for Pennsylvania Courts to allow punitive damages that are at least as large as the award of compensatory damages."); Hayfield v. Home Depot U.S.A., Inc., 168 F. Supp. 2d 436, 458 (E.D. Pa. 2001) (finding that a punitive award that was six and a half times the compensatory award was not excessive, even if a reasonable relationship test were to be applied); Delhanty v. First Pa. Bank, 464 A.2d 1243, 135-36 (Pa. Super.

---

[2] Punitive damages are recoverable for allegations of fraud under Pennsylvania law. Olkowski v. Prudential Ins. Co., 584 F. Supp. 1140, 1142 (E.D. Pa. 1984).

2001) (holding an 1:11 ratio of compensatory to punitive damages – $40,000 compensatory and $440,000 punitive – justifiable under the circumstances). While subsequent discovery may prove that the claims for punitive damages are patently frivolous, it is impossible, at this early stage of the proceedings, for the Court to conclusively find that Plaintiff's potential damages do not exceed $75,000. Accordingly, the Court declines to dismiss the remaining counts of the Second Amended Complaint.[3]

An appropriate order follows.

---

[3] Plaintiff also suggests that the Court must consider the value of the equitable relief count. As the Court finds the amount in controversy to have been met by aggregation of the claims for compensatory damages, attorneys fees and punitive damages, we need not address this claim.